

SEALED

ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 2 4 2013

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>  Plaintiff<br><br>v.<br><br>$159,600.00 IN U.S. CURRENCY IN SAFE DEPOSIT<br>BOX 52 LOCATED AT CITIZENS NATIONAL BANK;<br>$105,000.00 IN U.S. CURRENCY IN SAFE DEPOSIT<br>BOX 74 LOCATED AT CITIZENS NATIONAL BANK;<br>$409,320.00 IN U.S. CURRENCY;<br>$1,051.00 IN U.S. CURRENCY;<br>$451,518.95 IN FUNDS FROM MY CREDIT UNION<br>ACCOUNT ENDING IN 4030;<br>$627,147.19 IN FUNDS FROM CITIZENS NATIONAL<br>BANK ACCOUNT ENDING IN 0472;<br>$78,484.06 IN FUNDS FROM CITIZENS NATIONAL<br>BANK ACCOUNT ENDING IN 6214;<br>$107,612.96 IN FUNDS FROM CITIZENS NATIONAL<br>BANK ACCOUNT ENDING IN 5692;<br>$43,702.43 IN FUNDS FROM CITIZENS NATIONAL<br>BANK ACCOUNT ENDING IN 0995;<br>$48,884.92 IN FUNDS FROM CITIZENS NATIONAL<br>BANK ACCOUNT ENDING IN 0979;<br>$203.04 IN FUNDS FROM CITIZENS NATIONAL<br>BANK ACCOUNT ENDING IN 6206;<br>$1,601.25 IN FUNDS FROM WELLS FARGO BANK<br>ACCOUNT ENDING 9381;<br>$5,707.30 IN FUNDS FROM WELLS FARGO BANK<br>ACCOUNT ENDING 6904;<br>$37,119.32 IN FUNDS FROM WELLS FARGO BANK<br>ACCOUNT ENDING 1853;<br>$700.85 IN FUNDS FROM WELLS FARGO BANK<br>ACCOUNT ENDING 3921;<br>2012 Mercedes-Benz E63, VIN: WDDHF7EBXCA641729;<br>2012 GMC SIERRA 2500 DENALI TRUCK<br>VIN: 1GT125E80CF113913;<br>2012 CAN-AM COMMANDER LIMITED ATV | §<br>§<br>§<br>§<br>§<br>§<br>§   NO. 3:13-CV-___<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

3-13CV-2406B

**Complaint for Forfeiture – Page 1 of 28**

VIN: 3JBBVXP19CJ001641;                              §
1967 CHEVROLET C10 TRUCK VIN: CE147S184853;          §
2008 HEARTLAND CYCLONE M-3912 TRAVEL                 §
TRAILER VIN: 5SFGF40398E007023;                      §
(2) SEA DOO JET SKIS WITH TRAILER;                   §
1966 CHEVROLET C10 TRUCK VIN: C1546S15547;           §
2012 POLARIS RZR 800S ATV,                           §
VIN: 4XAVE76A8CF664457;                              §
1998 PONTIAC FIREBIRD, VIN: 2G2FV22G8W2219186;       §
2012 KEARNEY BTS TRAILER,                            §
VIN: 5LCLB1229C1026183;                              §
2013 BIG TEX 70P1 TRAILER,                           §
VIN: 16VPX1821D2E69234;                              §
2012 BAD BOY BBM RIDING LAWN MOWER,                  §
VIN: BBM4827BS05121197;                              §
2006 EZGO GOLF CART, VIN: 2353605;                   §
SNAP-ON ROLLING TOOL CABINET WITH TOOLS,             §
SERIAL NO.: S437254A;                                §
ASSORTED COINS FROM SAFE DEPOSIT BOX 52              §
LOCATED AT CITIZENS NATIONAL BANK;                   §
2013 KUBOTA TRACTOR WITH ATTACHMENTS,                §
SERIAL NO.: 73464;                                   §
　　　　　Defendants *In Rem.*                        §

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, by its undersigned attorneys, Sarah R. Saldana,

U.S. Attorney for the Northern District of Texas, and Brian Daniel Poe, Assistant United

States Attorney, brings this complaint and alleges as follows in accordance with

Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1.      This is an action to forfeit property to the United States pursuant to 18 U.S.C.

§ 981(a)(1)(A) and (a)(1)(C); and 21 U.S.C. § 881(a)(4) and (a)(6).

## THE DEFENDANT *IN REM*

2.     The defendant property consists of the following property, which was seized

from Robert Reaves (Reaves) on April 24, 2013:

    a.  $159,600.00 in U.S. currency from safe deposit box 52, located at Citizens
        National Bank;

    b.  $105,000.00 in U.S. currency from safe deposit box 74, located at Citizens
        National Bank;

    c.  $409,320.00 in U.S. currency;

    d.  $1,041.00 in U.S. currency;

    e.  $451,518.95 in funds from My Credit Union account ending in 4030;

    f.  $627,147.19 in funds from Citizens National Bank account ending in 0472;

    g.  $78,484.06 in funds from Citizens National Bank account ending in 6214;

    h.  $107,612.96 in funds from Citizens National Bank account ending in 5692;

    i.  $43,702.43 in funds from Citizens National Bank account ending in 0995;

    j.  $48,884.92 in funds from Citizens National Bank account ending in 0979;

    k.  $203.04 in funds from Citizens National Bank account ending in 6206;

    l.  $1,601.25 in funds from Wells Fargo Bank account ending in 9381;

    m.  $5,707.30 in funds from Wells Fargo Bank account ending in 6904;

    n.  $37,119.32 in funds from Wells Fargo Bank account ending in 1853;

    o.  $700.85 in funds from Wells Fargo Bank account ending in 3921;

    p.  2012 Mercedes-Benz E63, VIN: WDDHF7EBXCA641729;

    q.  2012 GMC Sierra 2500 Denali Truck, VIN: 1GT125E80CF113913;

r.  2012 Can-Am Commander Limited ATV, VIN: 3JBBVXP19CJ001641;

s.  1967 Chevrolet C10 Truck, VIN: CE147S184853;

t.  2008 Heartland Cyclone M-3912 Travel Trailer, VIN: SFGF40398E007023;

u.  (2) Sea Doo Jet Skis with trailer;

v.  1966 Chevrolet C10 Truck, VIN: C1546S15547;

w.  2012 Polaris RZR 800S ATV, VIN: 4XAVE76A8CF664457;

x.  1998 Pontiac Firebird, VIN: 2G2FV22G8W2219186;

y.  2012 Kearney BTS Trailer, VIN: 5LCLB1229C1026183;

z.  2013 Big Tex 70P1 Trailer, VIN: 16VPX1821D2E69234;

aa. 2012 Bad Boy BBM Riding Lawn Mower, VIN: BBM4827BS05121197;

bb. 2006 EZGO Golf Cart, VIN: 2353605;

cc. Snap-On Tool Cabinet and assorted tools, Serial No.: S437254A;

dd. Assorted coins from safe deposit box 52, located at Citizens National Bank;

ee. 2013 Kubota L3800HST Tractor and attachments, Serial No.: 73464

## JURISDICTION AND VENUE

3.     The court has subject matter jurisdiction over this action based on 28 U.S.C. §§ 1345 and 1355(a), since this is a forfeiture action commenced by the United States of America.

4.     The court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b).

5.     Venue is proper in this district under 28 U.S.C. §§ 1355(b)(1)(A), because acts or omissions giving rise to the forfeiture occurred in this district.

## LOCATION OF DEFENDANT PROPERTY

6.      The defendant property was seized by the Drug Enforcement Administration

(DEA) in the Northern and Eastern Districts of Texas.   The defendant property is now

held in the following locations:

> a.   All property described in paragraph 2(a) – (o) is being held in the seized asset
>
>       deposit fund account at the Federal Reserve Bank;
>
> b.   The property described in paragraph 2(dd) (Assorted coins from safe deposit
>
>       box 52 from Citizens National Bank) is being held in the custody of the U.S.
>
>       Marshals for the Eastern District of Texas in Tyler, Texas;
>
> c.   The property described in paragraph 2(p) – (cc) and (ee) is currently being
>
>       stored at a contractor's facility in Tyler, Texas.

## BASIS FOR FORFEITURE

### Synthetic Cannabinoids

7.      The Controlled Substances Act (CSA) contains a drug analogue[1] statute that

classifies chemical analogues of existing scheduled drugs as a scheduled drug in the same

category.    As a result of this statute and the prevalence of marijuana analogues, on March

1, 2011, DEA administratively placed five synthetic cannabinoids that were commonly

found in synthetic marijuana products (JWH-018, JWH-073, JWH-200, CP-47,497, and

Cannabicyclohexanol) in Schedule I of the CSA, which temporarily banned them and their

---

[1] A controlled substance analogue is defined as a substance which: (1) has a chemical structural substantially similar to that of a controlled substance in Schedules I or II; (2) has a stimulant, depressant or hallucinogenic effect on the central nervous system that is substantially similar to or greater than that of a controlled substance in Schedules I or II; or (3) a particular person represents or intends to have a stimulant, depressant, or hallucinogenic effect substantially similar to or greater than that of a controlled substance in Schedules I or II [21 U.S.C. 802(32)].

analogues for one year pending DEA and Food and Drug Administration studies.   On

February 29, 2012, DEA extended the Schedule I status of these substances for six months

pending the passage of a final regulatory ruling.

8.      On July 9, 2012, the President signed into law the Synthetic Drug Abuse

Prevention Act of 2012 (SDAPA). SDAPA amended the Controlled Substances Act by

placing 26 substances in Schedule I. The list of legislatively scheduled controlled

substances is found at 21 U.S.C. 812(c) and the current list of scheduled substances is

published at 21 C.F.R. § 1308. These initial schedules may be modified either by

legislation or by rulemaking.

9.      The legislation also creates a new definition for "cannabimimetic agents,[2]"

which creates criteria by which similar chemical compounds can be controlled.   Synthetic

---

[2] "Cannabimimetic agents," as defined in SDAPA are controlled under Schedule I and unless specifically
exempted or unless listed in another schedule, any material, compound, mixture, or preparation which
contains any quantity of the following substances, or which contains their salts, isomers, and salts of
isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific
chemical designation:

    a.   5-(1,1-dimethylheptyl)-2-[(1R,3S)-3-hydroxycyclohexyl]-phenol (CP-47,497);
    b.   5-(1,1-dimethyloctyl)-2-[(1R,3S)-3-hydroxycyclohexyl]-phenol (cannabicyclohexanol or
        CP-47,497 C8-homolog);
    c.   1-pentyl-3-(1-naphthoyl)indole (JWH-018 and AM678); 1-hexyl-3-(1-naphthoyl)indole
        (JWH-019);
    d.   1-[2-(4-morpholinyl)ethyl]-3-(1-naphthoyl)indole (JWH-200);
    e.   1-pentyl-3-(2-methoxyphenylacetyl)indole (JWH-250);
    f.   1-pentyl-3-[1-(4-methoxynaphthoyl)]indole (JWH-081);
    g.   1-pentyl-3-(4-methyl-1-naphthoyl)indole (JWH-122);
    h.   1-pentyl-3-(4-chloro-1-naphthoyl)indole (JWH-398);
    i.   1-(5-fluoropentyl)-3-(1-naphthoyl)indole (AM2201);
    j.   1-(5-fluoropentyl)-3-(2-iodobenzoyl)indole (AM694);
    k.   1-pentyl-3-[(4-methoxy)-benzoyl]indole (SR-19 and RCS-4);
    l.   1-cyclohexylethyl-3-(2-methoxyphenylacetyl)indole 7008 (SR-18 and RCS-8);
    m.  1-pentyl-3-(2-chlorophenylacetyl)indole (JWH-203) and
    n.   1-butyl-3-(1-naphthoyl)indole (JWH-073);

cannabinoids refer to a family of substances that act on the brain similar to delta-9 THC, the main psychoactive constituent of cannabis.

10.    On December 21, 2012, DEA published a rule to establish drug codes for these substances, and to make technical and conforming amendments in accordance with SDAPA.

11.    DEA has also placed the following substances on a temporary listing of substances subject to emergency scheduling.   Any material, compound, mixture, or preparation which contains any quantity of the following substances:

     a.   4-methyl-N-methylcathinone (mephedrone);

     b.   3,4-methylenedioxy-N-methylcathinone (methylone); and

     c.   3,4-methylenedioxypyrovalerone (MDPV)

12.    On May 16, 2013, DEA made the synthetic cannabinoids UR-144, XLR-11, and AKB-48 Schedule I, illegal drugs under the Controlled Substances Act (CSA) for the next two years.   Part of the press release explained "These cannabinoids are often seen in so-called 'fake pot' products that are falsely marketed and sold as 'herbal incense' or 'potpourri' products on the Internet and by a variety of retail stores."

13.    In addition to the banned substances listed under the CSA, SDAPA, and DEA rules, 21 U.S.C. § 813 provides a "catch all" regarding controlled substance analogues.   According to § 813, if the controlled substance analogue is intended for human consumption, then the substances are to be treated as a controlled substance in schedule I, for purposes of federal law.

**Distribution of Synthetic Cannabinoids by Robert Reaves**

14.     Robert Reaves (Reaves) is an Wills Point, Texas, resident who owns and operates the following "smoke shops" in the Northern and Eastern Judicial Districts of Texas:

      a.  Da Waterpipe, located at 1236 N. Main, Paris, Texas;

      b.  Hippy Xpress, 207 E. Moore St., Terrell, Texas;

      c.  Stash & Dash, 1492 E. Quinlan Parkway, Quinlan, Texas;

      d.  Budz Smoke Shop, located at 5335 State Highway 34 S, Greenville, Texas.

15.     On February 12, 2012, the Paris Police Department (PPD) conducted a traffic stop on an individual and located bath salts.[3]

16.     The bath salts found during the traffic stop tested positive for MDPV, which is a penalty group II controlled substance in the State of Texas and a violation of federal drug laws.

17.     Through their investigation, PPD was able to determine that the bath salts had just been purchased from Da Waterpipe.

18.     On February 12, 2012, PPD officers entered Da Waterpipe, during normal business hours, and observed several packages containing the same product which had previously field tested positive for MDPV.

19.     PPD conducted a consensual search of Da Waterpipe on February 12, 2012, and located 36 different brands of bath salts, all of which were seized.

---

[3] "Bath salts" is the informal street name for a family of designer drugs often containing substituted cathinones, which have the effects similar to amphetamine and cocaine.

20.     Due to the number of different brands seized from Da Waterpipe, the Texas

Department of Public Safety Laboratory (DPS) only tested representative samples for the

brands having the largest number of containers of a specific brand.[4]   As a result, only three

of the products seized were tested and each yielded a positive result for MDPV.

21.     On April 24, 2012, PPD conducted a controlled purchase for bath salts from

Da Waterpipe.   Each of the bath salts purchased during the April 24, 2012, controlled buy

tested positive for MDPV.

22.     Based on the positive test for MDPV from the bath salts obtained during the

controlled buy, PPD obtained a state search warrant to search the premises of Da

Waterpipe.

23.     During the execution of the PPD search warrant, PPD seized numerous

invoices showing payment had been made by Reaves to various known manufacturers of

synthetic cannabinoids and other controlled substances.   These manufacturers included:

   a.  Gypsy Scion Trading Company;

   b.  UGW Express;

   c.  Deep Powder; and

   d.  Amoe, Inc.

24.     In June 2012, the Hunt County Sheriff's Office (HSO) conducted an

undercover buy of suspected smokable synthetic cannabinoids from Budz Smoke Shop.

The product that was purchased was identified by its street name "Black Mamba."

---

[4] These drugs are usually packages in 1 or 3 gram containers.

25.     HSO sent the Black Mamba to the DPS laboratory for analysis and subsequent analysis concluded that it contained AM-2201.

26.     AM-2201 was officially banned under the SDAPA in July 2012, but has always been an illegal substance, under federal law, if intended for human consumption.

27.     On September 6, 2012, HSO executed a state search warrant for Budz Smoke Shop and seized 450 packages of Black Mamba and a glass jar of bath salts.

28.     The bath salts seized during the September 6, 2012, HSO search warrant field tested positive for MDPV.

29.     In addition to the Black Mamba and bath salts, HSO seized over 100 different brands of suspected smokable synthetic cannabinoids, including "Mr. Nice Guy"[5] and "Kush."[6]

30.     In addition, numerous packages of the suspected synthetic cannabinoids that were seized on September 6, 2012, resembled analogues of marijuana that have been discovered in various DEA investigations throughout the country.

31.     On April 15 - 16, 2013, HSO and PPD conducted undercover purchases of two packages of suspected smokable synthetic cannabinoid from each of the following businesses:

---

[5] "Mr. Nice Guy" brands have been seized by DEA investigations conducted in Missouri, Wisconsin, New York, Tennessee, South Carolina, West Virginia, Florida, Texas, North Carolina, Nevada, Maryland, Oklahoma, Washington, New Jersey, Oregon, New Mexico, Arizona, South Dakota, California, Indiana, and Kentucky.   On February 15, 2013, Dylan Harrison, owner of AGX Products, located in Milwaukee, Wisconsin, and the manufacturer of the "Mr. Nice Guy" brands, entered a guilty plea for violations of 21 U.S.C. §§  331(a), 333(a), 352(a) 813, and 841(a)(1), and 18 U.S.C. §§ 371 and 1956(a)(1)(A)(i).
[6] The analogue of marijuana branded "Kush" is manufactured by TKO Limited, which is owned by Trenton Kaminski, this product is manufactured by mixing 25kg of a Mullein leaf with 1 kg mixture of 5F-UR144 (a.k.a. XLR11) and UR144.

    a.  Da Waterpipe;

    b.  Budz Smoke Shop;

    c.  Hippy Xpress; and

    d.  Stash & Dash.

32.    The two packages that were purchased at each smoke shop were identified by the street names "Angry Bird" and "Purefire."

33.    Forensic laboratory examination of "Angry Bird" showed that "Angry Bird" contained XLR-11.

34.    Forensic laboratory examination of "Purefire" showed that "Purefire" contained XLR-11 and PB-22.

35.    XLR-11 is an analog of the phenacetylinoles group, which includes AM-694, AM-1241 and JWH-167 (PG-2A substances).

36.    XLR-11 was officially banned under the CSA in May 2013, but has always been an illegal substance, under federal law, if intended for human consumption.

37.    PB-22 is an analogue of JWH-018 and, under federal law, is an illegal substance if intended for human consumption.

### Facebook

38.    A review of the Facebook pages for Da Waterpipe, Stash & Dash, Hippy Xpress, and Budz Smoke Shop revealed advertising for the sale of synthetic controlled substances.

39.    "Secret" words are also posted on the Facebook pages in order for customers to obtain discounts on the purchase of controlled substances.

40.     Additionally, on the Hippy Xpress Facebook page, individuals have observed the comment "Come see us tonight, open until midnight, due to DEA bank, lots of herbs half off tonight."

### Reaves' Financial Activity

41.     Reaves opened his first business checking account in May 2001 under the business name Da Waterpipe.

42.     From November 2000 until late 2010, Reaves' banking activity was nominal at best.

43.     However, since late 2010, Reaves has opened bank accounts at a number of financial institutions, including:

      a.  Alliance Bank;

      b.  First National Bank of Texas;

      c.  Wells Fargo;

      d.  American National Bank;

      e.  My Credit Union; and

      f.  Citizens National Bank.

44.     Reaves sells a small amount of adult novelty items and counterculture clothing through his smoke shops, but these items only generate a nominal amount of profit.

45.     Since 2010, all of Reaves' income, except for the nominal amount of income discussed in paragraph 49, is generated and is derived from:

      a.  The sale of smokable synthetic cannabinoids;

    b. The sale of synthetic schedule I drugs; and

    c. The assorted paraphernalia used to ingest these substances.

Bank of America

46.    Reaves maintained the following bank accounts with Bank of America (BOA):

    a. Business checking account no. xxxxxxxx4109, in the name of Da Waterpipe;

    b. Business checking account no. xxxxxxxx8149, in the name of Budz Smoke Shop;

    c. Personal checking account no. xxxxxxxx7891, in the name of Robert Reaves;

    d. Savings account no. xxxxxxxx7901, in the name of Robert Reaves.

47.    From February 2011 through April 2012, over $2.3 million in currency was deposited into the accounts of Da Waterpipe and Budz Smoke Shop.   During this time, Reaves was averaging over $50,000 per day in currency deposits.

48.    Reaves utilized the BOA accounts to purchase product (via check) from vendors known to be involved in the manufacturing of analogues of marijuana and other synthetic schedule I drugs.   These vendors included:

    a. Gypsy Scion Trading Company;

    b. Raise the Bar;

    c. S.E. Ventures;

    d. All Led; and

    e. Ultra Expressions.

49.     Reaves consistently made substantial money transfers by check from his BOA accounts to accounts he held and controlled at Citizens National Bank and My Credit Union.

<u>American National Bank</u>

50.     Reaves established several bank accounts with American National Bank (ANB), including:

    a.  Business checking account no. xxxxxx5210, in the name of Da Waterpipe Tax Account;

    b.  Business checking account no. xxxxxx0038, in the name of Hippy Xpress;

    c.  Business checking account no. xxxxxx7422, in the name of Budz Smoke Shop; and

    d.  Personal checking account no. xxxxxx2514, in the name of Robert Reaves.

51.     From May 2, 2011 through November 11, 2011, over $650,000 in currency was deposited into the ANB accounts.

52.     Reaves deposited checks written from the Hippy Xpress and Budz Smoke Shop accounts at ANB, along with funds from Reaves' BOA accounts, into the Da Waterpipe Tax Account at ANB.   Reaves then pays his taxes via an electronic debit from this account.

53.     These accounts were closed by ANB and all funds were transferred to other accounts maintained by Reaves.

<u>Citizens National Bank</u>

54.    Reaves established several bank accounts with Citizens National Bank
(CNB), including:

    a.   Personal checking account no. xxx5692, in the name of Robert Reaves;

    b.   Personal checking account no. xxx6206, in the name of Robert Reaves;

    c.   Personal checking account no. xxx6214, in the name of Robert Reaves;

    d.   Business checking account no. xxx0472, in the name of Reaves Retail
        Management LLC;

    e.   Business checking account no. xxx0979, in the name of Budz Smoke Shop
        LLC; and

    f.   Business checking account no. xxx0995, in the name of Reaves Retail
        Management DBA Stash & Dash;

55.    The deposit activity in CNB5692 consists of transfers, by check, from other
accounts maintained by Reaves.

56.    The withdraw activity in CNB5692 consists of a substantial amount of funds
being converted to currency, while the remaining funds are being used for:

    a.   Personal living expenses;

    b.   The purchase of a 2012 Mercedes-Benz E63;

    c.   The purchase of a Can-Am recreational vehicle from Broadway
        PowerSports; and

    d.   Improvements to Reaves' home in Wills Point, Texas.

57.    On April 24, 2013, a federal seizure warrant was executed on CNB5692 and $107,612.96 in funds was seized by federal agents.

58.    The $107,612.96 seized from CNB5692 is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title 21 of the United States Code, and/or as proceeds traceable to such an exchange and all moneys, negotiable instruments, which are used, or intended to be used to facilitate any violation of Title 21 of the United States Code.

59.    The deposits in CNB6206 are composed of currency.

60.    The funds in CNB6206 are utilized to pay Reaves' living expenses.

61.    On April 24, 2013, a federal seizure warrant was executed on CNB6206 and $203.04 in funds was seized by federal agents.

62.    The $203.04 in funds seized from CNB6206 is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title 21 of the United States Code, and/or as proceeds traceable to such an exchange and all moneys, negotiable instruments, which are used, or intended to be used to facilitate any violation of Title 21 of the United States Code.

63.    The deposits in CNB6214 are composed of transfers by check from bank accounts in the name of Hippy Xpress, Budz Smoke Shop, Stash & Dash, and Da Waterpipe.

64.     The funds in CNB6214 are electronically transferred to the State of Texas to pay Reaves' sales tax, and to the Internal Revenue Service to pay Reaves' payroll taxes.

65.     On April 24, 2013, a federal seizure warrant was executed on CNB6214 and $78,484.06 in funds was seized by federal agents.

66.     The $78,484.06 in funds seized from CNB6214 is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title 21 of the United States Code, and/or as proceeds traceable to such an exchange and all moneys, negotiable instruments, which are used, or intended to be used to facilitate any violation of Title 21 of the United States Code.

67.     The deposits in CNB0472 are composed of transfers by check from bank accounts in the name of Hippy Xpress, Budz Smoke Shop, Stash & Dash, and Da Waterpipe.

68.     The funds in CNB0472 are transferred via check to personal accounts in Reaves' name maintained at CNB and My Credit Union.

69.     On April 24, 2013, a federal seizure warrant was executed on CNB0472 and $627,147.19 in funds was seized by federal agents.

70.     The $627,147.19 in funds seized from CNB0472 is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title 21 of the United States Code,

and/or as proceeds traceable to such an exchange and all moneys, negotiable instruments, which are used, or intended to be used to facilitate any violation of Title 21 of the United States Code.

71.     The deposits in CNB0979 were composed primarily of currency.

72.     In addition to transferring the funds in CNB0979 to Reaves' personal bank accounts, funds were used to purchase product (via check) from manufacturers who are known suppliers of analogues of marijuana and analogues of cocaine and amphetamines. These manufacturers include:

      a.  Xtreme World Wholesale;

      b.  Ultra Expression; and

      c.  Blue Sol.

73.     On April 24, 2013, a federal seizure warrant was executed on CNB0979 and $48,884.92 in funds was seized by federal agents.

74.     The $48,884.92 in funds seized from CNB0979 is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title 21 of the United States Code, and/or as proceeds traceable to such an exchange and all moneys, negotiable instruments, which are used, or intended to be used to facilitate any violation of Title 21 of the United States Code.

75.     The deposits in CNB0995 were composed primarily of currency.

76.     In addition to transferring the funds in CNB0995 to Reaves' personal bank accounts, funds were used to purchase product (via check) from manufacturers who are known suppliers of analogues of marijuana and analogues of cocaine and amphetamines. These manufacturers include:

     a.  Xtreme World Wholesale;

     b.  Ultra Expression; and

     c.  Blue Sol.

77.     On April 24, 2013, a federal seizure warrant was executed on CNB0995 and $43,702.43 in funds was seized by federal agents.

78.     The $43,702.43 in funds seized from CNB0995 is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title 21 of the United States Code, and/or as proceeds traceable to such an exchange and all moneys, negotiable instruments, which are used, or intended to be used to facilitate any violation of Title 21 of the United States Code.

79.     In addition to maintaining bank accounts at CNB, Reaves' maintained two safe deposit boxes, which were:

     a.  Safe Deposit Box 52; and

     b.  Safe Deposit Box 74.

80.     Reaves has been seen accessing the safe deposit boxes carrying "a plastic grocery bag full of bills."

81.     On April 24, 2013, a federal search warrant was executed on CNB safe deposit boxes 52 and 74.

82.     As a result of the search warrants, the following items were seized by federal agents:

      a.   $159,600 in U.S. currency from CNB safe deposit box 52;

      b.   Assorted coins from CNB safe deposit box 52; and

      c.   $105,000 in U.S. currency from CNB safe deposit box 74.

83.     The $159,600 in U.S. currency seized from CNB safe deposit box 52 is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title 21 of the United States Code, and/or as proceeds traceable to such an exchange and all moneys, negotiable instruments, which are used, or intended to be used to facilitate any violation of Title 21 of the United States Code.

84.     The assorted coins seized from CNB safe deposit box 52 are subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title 21 of the United States Code, and/or as proceeds traceable to such an exchange and all moneys, negotiable instruments, which are used, or intended to be used to facilitate any violation of Title 21 of the United States Code.

85.     The $105,000 in U.S. currency seized from CNB safe deposit box 74 is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title 21 of the United States Code, and/or as proceeds traceable to such an exchange and all moneys, negotiable instruments, which are used, or intended to be used to facilitate any violation of Title 21 of the United States Code.

### My Credit Union

86.     Reaves maintains personal checking account no. xxx4030 at My Credit Union (MCU4030).

87.     This account was established with funds drawn upon a Da Waterpipe bank account at BOA.

88.     Deposits into MCU4030 consist of checks drawn upon other business checking accounts maintained by Reaves.

89.     On April 24, 2013, a federal seizure warrant was executed on MCU4030 and $451,518.95 in funds was seized by federal agents.

90.     The $451,518.95 in funds seized from MCU4030 is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title 21 of the United States Code, and/or as proceeds traceable to such an exchange and all moneys, negotiable instruments,

which are used, or intended to be used to facilitate any violation of Title 21 of the United States Code.

Wells Fargo

91.   Reaves established several bank accounts with Wells Fargo Bank, including:

    a.   Business checking account xxxxxx9381, in the name of Robert Reaves DBA Hippy Express (WF9381);

    b.   Business checking account xxxxxx6904, in the name of Robert Reaves DBA Hippy Express (WF6904);

    c.   Business checking account xxxxxx1853, in the name of Robert Reaves DBA Hippy Express (WF1853);

    d.   Business checking account xxxxxx3921, in the name of Robert Reaves DBA Hippy Express (WF3921);

92.   The deposits to the Wells Fargo accounts are composed primarily of:

    a.   Currency;

    b.   Transfers from other bank accounts maintained at Wells Fargo by Reaves; and

    c.   Funds transferred from accounts held at other financial institutions referenced in this complaint.

93.   Withdrawals from these accounts consisted of numerous payments to manufacturers of synthetic cannabinoids, cannabimimetic agents or the chemicals/analogs of these and designer cathinones (synthetic stimulants).  These manufacturers include;

    a.   Xtreme World Wholesale;

    b.   Ultra Expression; and

    c.   Blue Sol.

94.    Additionally, Reaves transferred substantial amounts of money, via checks, from Wells Fargo accounts to Reaves' accounts held CNB.

95.    On April 24, 2013, a federal seizure warrant was executed on WF9381 and $1,601.25 in funds was seized by federal agents.

96.    The $1,605.25 in funds seized from WF9381 is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title 21 of the United States Code, and/or as proceeds traceable to such an exchange and all moneys, negotiable instruments, which are used, or intended to be used to facilitate any violation of Title 21 of the United States Code.

97.    On April 24, 2013, a federal seizure warrant was executed on WF6904 and $5,707.30 in funds was seized by federal agents.

98.    The $5,707.30 in funds seized from WF6904 is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title 21 of the United States Code, and/or as proceeds traceable to such an exchange and all moneys, negotiable instruments, which are used, or intended to be used to facilitate any violation of Title 21 of the United States Code.

99.    On April 24, 2013, a federal seizure warrant was executed on WF1853 and $37,119.32 in funds was seized by federal agents.

100.    The $37,119.32 in funds seized from WF1853 is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title 21 of the United States Code, and/or as proceeds traceable to such an exchange and all moneys, negotiable instruments, which are used, or intended to be used to facilitate any violation of Title 21 of the United States Code.

101.    On April 24, 2013, a federal seizure warrant was executed on WF3921 and $700.85 in funds was seized by federal agents.

102.    The $700.85 in funds seized from WF3921 is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title 21 of the United States Code, and/or as proceeds traceable to such an exchange and all moneys, negotiable instruments, which are used, or intended to be used to facilitate any violation of Title 21 of the United States Code.

### Execution of Search Warrants

103.    On April 24, 2013, federal and local law enforcement executed federal search warrants on the following Reaves' properties:

a.    Reaves' residence, located at 1677 Gateway Dr., Wills Point, Texas;

b. Da Waterpipe, located at 1236 N. Main, Paris, Texas;

c. Hippy Xpress, located at 207 E. Moore St., Terrell, Texas;

d. Stash & Dash, located at 1492 E. Quinlan Parkway, Quinlan, Texas;

e. Budz Smoke Shop, located at 5335 State Highway 34 S, Greenville, Texas.

104.   Over 167,000 grams (Over 360 pounds) of suspected marijuana analogues, including 706 grams of "Angry Bird," were seized from the four business locations during the execution of the April 24, 2013, search warrants.

105.   A portion of the evidence seized from the residence and business office contained business records, which detailed various vendors known to be distributors and/or manufacturers of marijuana analogues.

106.   In addition to the seizure of suspected marijuana analogues and business records, investigators seized the following assets from Reaves' on April 24, 2013:

a. $409,320.00 in U.S. currency;

b. $1,041.00 in U.S. currency;

c. 2012 Mercedes-Benz E63, VIN: WDDHF7EBXCA641729;

d. 2012 GMC Sierra 2500 Denali Truck, VIN: 1GT125E80CF113913;

e. 2012 Can-Am Commander Limited ATV, VIN: 3JBBVXP19CJ001641;

f. 1967 Chevrolet C10 Truck, VIN: CE147S184853;

g. 2008 Heartland Cyclone M-3912 Travel Trailer, VIN: SFGF40398E007023;

h. (2) Sea Doo Jet Skis with trailer;

i. 1966 Chevrolet C10 Truck, VIN: C1546S15547;

j. 2012 Polaris RZR 800S ATV, VIN: 4XAVE76A8CF664457;

k.  1998 Pontiac Firebird, VIN: 2G2FV22G8W2219186;

l.  2012 Kearney BTS Trailer, VIN: 5LCLB1229C1026183;

m.  2013 Big Tex 70P1 Trailer, VIN: 16VPX1821D2E69234;

n.  2012 Bad Boy BBM Riding Lawn Mower, VIN: BBM4827BS05121197;

o.  2006 EZGO Golf Cart, VIN: 2353605;

p.  Snap-On Tool Cabinet and assorted tools, Serial No.: S437254A; and

q.  2013 Kubota L3800HST Tractor and attachments, Serial No.: 73464

107.  Each of the items described in paragraph 106 is subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(6), as moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title 21 of the United States Code, and/or as proceeds traceable to such an exchange and all moneys, negotiable instruments, which are used, or intended to be used to facilitate any violation of Title 21 of the United States Code.

108.  In addition to being forfeitable as "proceeds" under 21 U.S.C. § 881(a)(6), the following vehicles are subject to forfeiture to the United States pursuant to 21 U.S.C § 881(a)(4), as vehicles used or intended for use, to transport, or to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances acquired in violation of Title 21 of the United States Code:

a.  2012 Mercedes-Benz E63;

b.  2012 GMC Sierra 2500 Denali Truck;

c.  1967 Chevrolet C10 Truck;

    d.  1966 Chevrolet C10 Truck; and

    e.  1998 Pontiac Firebird

109.    By reason of the foregoing, the defendant property is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to a an offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7).

110.    By reason of the foregoing, the defendant property is subject to forfeiture to the United States pursuant to 18 U.S.C § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957.

111.    The United States requests that the defendant property be forfeited to the United States, that the plaintiff be awarded its costs and disbursements in this action, and any further relief this Court deems proper and just.

Respectfully submitted,

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

/s/ Brian Daniel Poe
BRIAN DANIEL POE
Assistant United States Attorney
State Bar of Texas No. 24056908
1100 Commerce St., Suite 300
Dallas, Texas   75242
Telephone: 214.659.8670
Facsimile: 214.659.8803
brian.poe@usdoj.gov

## VERIFICATION OF COMPLAINT

I, Richard C. Gardner, declare under penalty of perjury that the following is true and correct to the best of my knowledge.

I am a Special Agent with the Drug Enforcement Administration, and I have been assigned to assist in the forfeiture of the defendant property.   I have read the foregoing Complaint for Forfeiture *In Rem* and know its contents.   The information contained in the Complaint for Forfeiture *In Rem* has been furnished from official government sources and, based on information and belief, the allegations contained in the Complaint for Forfeiture *In Rem* are true and correct.

Date: June 24, 2013

RICHARD C. GARDNER
Special Agent
Drug Enforcement Administration

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
$159,600.00 in U.S. currency from safe deposit box 52, located at Citizens National Bank, et al.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

RECEIVED
JUN 24 2013

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Brian Daniel Poe, Assistant United States Attorney
1100 Commerce Street, Suite 300, Dallas, Texas 75242
Telephone: (214) 659-8670

Attorneys *(If Known)*

3-13CV-2406B

## II. BASIS OF JURISDICTION  *(Place an "X" in One Box Only)*

- ☒ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☒ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & / ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander / Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' / Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | Liability / ☐ 368 Asbestos Personal | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 340 Marine / Injury Product | | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / Liability | | **LABOR** / **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle / ☐ 370 Other Fraud | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | Product Liability / ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | ☐ 360 Other Personal / ☐ 380 Other Personal | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | Injury / Property Damage | Leave Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - / ☐ 385 Property Damage | ☐ 790 Other Labor Litigation | | Act |
| | Med. Malpractice / Product Liability | ☐ 791 Empl. Ret. Inc. | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | Security Act | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 220 Foreclosure | ☐ 441 Voting / Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / **Habeas Corpus:** | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ / ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | Accommodations / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | Employment / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | |
| | ☐ 446 Amer. w/Disabilities - / ☐ 555 Prison Condition | Alien Detainee | | |
| | Other / ☐ 560 Civil Detainee - | (Prisoner Petition) | | |
| | ☐ 448 Education / Conditions of | ☐ 465 Other Immigration | | |
| | / Confinement | Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Civil Forfeiture 18 U.S.C. § 981(a)(1)(A)

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes  ☒ No

## VIII. RELATED CASE(S) PENDING OR CLOSED:
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
06/24/2013

SIGNATURE OF ATTORNEY OF RECORD
AUSA Brian Daniel Poe

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____